Thank you your honor. Good morning. May it please the court. My name is Ethan Blevins appearing for Appellant Freedom Foundation. The lobby at issue in this case is an 11,000 square foot space that accommodates farmers markets, Zumba classes, transit fares, and it can accommodate a single canvasser passing out information in the lobby. The district court erred for two primary reasons. First... Counsel, I have a question right at the get-go. The farmers market, the other people who take advantage of this open space, did they ask for permission to do that? So our understanding from the record is that those activities did have pre-approval from Sandy Stewart or another officer at the Department of Ecology, yes. Did your client ever seek such approval? Not in 2015 your honor, but in prior to their attempt to leaflet in 2017, they contacted Ms. Stewart who is head of human resources and the contact for this pre-approval process and they were denied the access to the lobby at that time, yes. Was there anything to prevent your client from leafleting outside the front door of the building? No, and Ecology has offered that as an alternative, but I think understanding the nature of the space at issue demonstrates why that would not be an adequate alternative for the channel communication at issue here, which is that there are two primary entrances. There's a visitor's entrance and then there's an employee entrance that's connected to an employee-only parking canvassers to reach Ecology employees or their intended audience if they're out in that open plaza area, and that's why Freedom Foundation is consistently sought to be inside the public areas of the building where public has access to the building during the working hours of the day. Well okay, but Judge Layton pretty much started with saying it was non-public, is that correct? He did conclude it was not a public forum. I think one of the key errors here though is that after engaging in his public forum analysis, he effectively treated that as dispositive of the First Amendment issue. So he then went on and simply concluded in a single statement that viewpoint neutrality and reasonableness were satisfied quote-unquote as a matter of law and didn't actually address any of the evidence or arguments brought by Freedom Foundation with respect to viewpoint neutrality and reasonableness. But this case has never turned simply on what type of forum was at issue, although we certainly argue that this is a designated public forum at least to a particular class of speakers. We did argue at some length and present evidence that even if this was a non-public forum, the actions taken by Ecology and the policy at issue here were not viewpoint neutral or reasonable, at least as applied to the First Amendment. So you don't agree with that, I'm assuming, or you wouldn't be here, right? Or do you agree with that? Do you agree that there are no disputed issues, but he just got the law wrong, or how are we doing this? More of the latter. So I do think that there are some issues that could be useful to flesh out potentially on remand, but we think that there is a sufficient record for this court to do an independent review of the record and So, for example, we presented evidence that, uncontested evidence, that the policy at issue, this administrative policy 1410, was passed in direct response to Freedom Foundation, their attempt to leaflet in 2015, and that they have applied that policy against Freedom Foundation while allowing other organizations that speak on matters related to ecology business to speak in that lobby. And so we believe that gives rise to an inference of viewpoint discrimination, not only because the policy was inspired by and passed because of Freedom Foundation, but that it appears to be a disparately enforced against Freedom Foundation while allowing other organizations to use that speech. Who are the other organizations in the record? So there are several. So inner city transit is one, which was allowed to do a transit fair in the lobby area for a couple of hours. This was after the speech regulation at issue was passed. And there's Joyride Bikes, a local bike retailer that performed a bike repair demonstration in the lobby. There's also the Thurston County Gardeners Association. Excuse me, counsel, did Joyride or the other group ask for permission? I believe so, Your Honor. It's not clear from the I believe Ms. Stewart testified that she didn't specifically recall whether approval, preapproval was sought. We know that Sultana Shah, who's an employee of the Department of Ecology, who is involved in this commute trip reduction program that the Department of Ecology has, did set up those programs. So presumably they received preapproval. So there's some Do I understand correctly that the two instances in which you argue that your clients were denied access both involved individuals who were dressed in holiday attire? That is correct, Your Honor. And in one instance, the individual was dressed up like Santa Claus. In both, I believe, Your Honor. Yes. Yes. And was not content to stay in the lobby area, but in fact, went into the building and went into an ongoing meeting. In 2015, yes, but not in 2017. I think the 2015 event, it's not really disputed that there was a substantial amount of confusion about where Freedom Foundation had access to. And security initially told them they could access those non-public areas of the building. And once security understood who Freedom Foundation was, I think there was confusion about whether they were with the union itself or not. Then that right of accessing those portions of the building were retracted. But there really isn't any contest from Freedom Foundation at this point that they don't have or are not seeking access to those non-public areas of the building. How do you know that Ecology would prohibit your client from setting up a table and leafleting inside the lobby if they've never asked permission to do so? So they did ask in 2017. I think in 2015, admittedly, and this was in deposition testimony, Freedom Foundation hadn't engaged in this kind of pamphleting at government buildings prior to that. They had spoken with security, general security personnel, but hadn't spoken with the Department of Ecology specifically. And I think now, after that 2015 event, realized that they need to do that and are willing to do that in the future to contact Ecology and work out a proper time, place, and manner for engaging in that speech activity. Then how is this case ripe? Well, I think it's ripe because in 2017, they did seek pre-approval and were still nonetheless denied. They did try to enter the lobby and pass that information. Mr. soon after arrived and reiterated that they were not given access and Freedom Foundation left at that point. So we do have an actual attempt for them to seek approval and then have that approval denied them. They went through the application process with the rule that Ecology had set up? So as far as we understand those rules... Could you start with a yes or no? Yes, they did. They did, your honor. So the inner city transit and joyride bike, it seems like there's a few different approval processes at issue here, I should say, initially, which is why I think there might be a little bit of confusion on this front. But inner city transit and joyride bikes, as far as we understand, were both allowed onto the premises through an informal approval process. So Ms. Shaw sent an email to her supervisor saying, essentially, is it okay if joyride bikes comes and does a bike repair demonstration on premises at this time, and then received an email in the affirmative. So there was no application process that we were aware of or were told about by Ecology beyond simply asking for permission from the relevant officer who we were told was Ms. Stewart. And that's the person that Ecology sought permission to access the premises with. Okay, go ahead. Is there anything in the record showing anybody else who wanted a leaflet in the lobby was granted permission? Yes, although it's testimony that's not clear about who that is. So in 2015, the security supervisor, Ken Nasworthy, who communicated with Freedom Foundation, said that the union and other groups handed out information in the lobby, quote unquote, all the time. We don't know who all those organizations are. Ken is the own employee union. Your organization wants to say you can opt out? One of those organizations is the union. That's correct, Your Honor. Is there anybody else? Is there anything in the record showing anybody else other than the union passing out leaflet material? Leaflet specifically, it's not clear. So we don't know, for example, what intercity transit passed out, if they passed out information or if they were just sharing information about transit options. So we don't know if there was an actual physical passing of information. We know that the food bank was allowed access to this premises to share information about their organization, and it's not clear from the record whether that was written material or simply a verbal exchange, similar with the Gardeners Association. So one possible issue on remand would be determining what the exact type of expression engaged in by these organizations were and the individuals. So there's a statement from someone that other people, it's someone with ecology, said there have been other people that have been allowed the leaflet. So that's in the record? Yes, that was part of Mr. Nasworthy's, that was a statement made by Mr. Nasworthy to Freedom Foundation attorney David Dewhurst in the transcript of the video that was taken of that I'll obtain a record site to give that to you on rebuttal for sure, for certain. But we do have that testimony. We do think that it's sufficient to say that at least to, as to groups that are present to speak about matters of ecology business. So the reg, the policy prohibits visitors from soliciting for outside organizations on ecology's and then policy 7-10 requires visitors to have an agency contact. So there is, if they have an agency contact, they're probably different, they have a different process than someone like you, right? Is that what you're saying? Well, it seems like the agency contact is essentially, I believe what we saw happen with respect to Joyer Bites and inner city transit where Ms. Shaw sent an email and was in communication with this organization and asked for permission. So here again, ecology has tried to arrange for that. We do have testimony in the record toward the end of Sandy Stewart's deposition testimony where she indicates that even if an employee of ecology invited or sought permission for on behalf of Freedom Foundation come onto the premises and leave from the lobby, they would still not be allowed to do that. So it doesn't seem to be matter of drawing the line between have they been invited by ecology employees or not. And that's not a part of policy 14-10 anyway. And ecology has consistently said organizations that speak to matters of ecology business are allowed access. And we also have testimony. If no one can leaflet in that area, is your argument, do you lose? I don't think so because I don't think we can draw the boundaries of the forum with so tightly around the exact type of expression. So if it was simply that no private organizations are allowed access for any type of expression, whether it's leafleting or what have you, then I think that we would have probably properly closed forum. Then the question would be whether the action taken by ecology was viewpoint discriminatory or not. But if they don't let anyone come, how could it be discriminatory? I agree. If they don't want you, I do not want you in my house leafleting and I'm not going to let anyone in. So I think it is fair to say that that's clear from Supreme Court precedent that they can close the forum off entirely. I think in terms of are you saying so what in the record supports your position that they haven't closed it off entirely and it's viewpoint discriminatory? Certainly. So we have in the record certain organizations are allowed to come and speak on the premises. So I think that in itself at least either creates a designated public forum for a particular class of speakers or indicates that some people are allowed when they speak on matters of ecology business. And we also have testimony from Ms. Stewart in the 30b6 testimony that labor relations are a matter of state business. Well so let me ask you this about that union. All right there's a uh I think ecology takes the position well we have a collective bargaining agreement that requires us to let the union on the premises. So they have to do that. So they're not inviting the union. They say we have to do it under collective bargaining. If that is if they're only but now is everyone in ecology a member of the union? No. Okay so after Janice there's evidence in the record that was a Janice table in the uh in in the lobby. Um if the Janice if the union were telling people explain Janice in a way that says well even though Janice this is why you still need to be a member of the union. Would that be covered by the collective bargaining or would that be allowing a viewpoint that is contrary to your viewpoint? So my understanding of the collective bargaining agreement is that they are allowed onto the premises for representational activities. And I don't believe um advocating for union membership or advocating for people to remain members despite Janice um and so forth fits within that. So I think when the union is speaking on matters that aren't representational activities they should be treated like a private organization. What is the record so the Janice table what what does that fact is that representational? I don't think it is but I think that that is an issue that we have should have the opportunity to flesh out at a bench trial because Miss Stewart testified that she did not know the nature of the communications going on between the record page um I think it's 54. Um it appears that there was a membership drive which we think would constitute advocacy rather than simply representational activities. But I don't think that this is just about uh the union only there are other organizations given access as well. I know my time's um expired. So we have questions so that's fine. Um but so my question is if you had in the record evidence that the union was allowed to in the lobby to advocate for membership which you do not have in the record does that would that automatically okay that that that changes things right there. So why don't you have you know why don't you have something like that if you have something like that that makes it easier doesn't it? I think it does make it easier um because we didn't have testimony um from any of the opponents about the uh the exact type of expression going on um it makes it difficult but we do know that there was a membership drive and we don't know exactly what was said there but presumably um I think a membership drive implies that there's advocacy for union membership which is beyond the record is that so that that would um record page 54 I believe. We also have the Janice um table as you mentioned. I think both of those uh facts could deserve further fleshing out and and our issues of material fact that would merit a remand if the court thinks that that is going to be dispositive. I do think that the other organizations present makes that a method of billing that we have intercity transit and organizations like that in addition to the union. And with that I'll let the remainder of my time expire. Thank you your honor. Um well let's do either of my colleagues have any additional questions? No. Okay so after I hear from the other side I'll consider if we need any rebuttal time. Okay thank you. All right. Thank you your honors. Uh can you hear me okay? Yes and we can see you too. That's great. Good morning. May it please the court. Emily Nelson, assistant attorney general representing state appellees. The first amendment does not give Freedom Foundation the power to dictate how ecology uses its own facilities. Ecology's lobby is a place of business and it has never been held open for expressive activity. The fact that some expression might occur incidental to business purposes does not render the lobby a public forum under the first amendment. We ask that this court affirms summary judgment. I'd like to start off by clarifying a couple of uh earlier questions from Judge Hawkins. The in the events that occurred in the lobby uh that Mr. Blevins referred to those were all They were not advertised to the public. They were not open to the public and the organizations that participated in those events were invited for the specific purpose of sharing discreet information and expertise related to the topics that were um that were the focus of those internal events. So it's incorrect to say that other organizations have sought and been granted access to the lobby for the purpose of engaging in expressive activity. So what would happen if the union engaged in non-representational activities on ecology's premises? What would happen if they on that? Because I have questions about the Janice table um you know that I mean there are things that are representational but the issue here is freedom or what the name what Freedom Foundation thinks people don't need to be in a union. The union obviously wants more membership and if there's something in here and and Janice comes down and Janice gives employees more choice. What's the purpose of the Janice table then? So um your honor if I can clarify a fact an undisputed fact about the Janice table. So the request to set up the Janice table was for an area in secured employee workplace. It was not actually in the 258 of the excerpt of the record. There's a map in there a color-coded map that shows the layout of ecology's building and there is a grayish blue area that is the human resources office and that is the area where it was requested that the union could set up a table to be available to answer employee questions the day that the Janice decision was rendered. Now Janice. What if their whole purpose is to tell people well Janice doesn't say you don't have to be in the union anymore and they give it a total spin on that. Are you allowed that's that's a private place so but are you allowing and freedom with I could be sitting at the next table and saying aha this is just exactly what we want to talk to you about. So uh human resources director Sandy Stewart testified that if the department of ecology became aware of the union stepping outside the bounds of representational activities that ecology would take action. It would conduct an investigation. It would raise the matter with the union and any employees that might be potentially involved and it also would elevate the issue potentially to the office of financial management which is the state agency that generally oversees the state of Washington's relationship with the union. So the department of ecology would not sit in on these conversations that are happening because representational activities those concern the terms and conditions of employment. Anything having to cover matters that have been previously bargained between the employees and their employer and so it would be inappropriate for an ecology manager or someone from HR to come and try and listen in and hear what should they should the union meet with anyone that's not a member. So ecology um do you mean uh if someone who isn't a member. Do they have access to you have non-members of the union in ecology correct? Correct and um ecology's uh collective bargaining unit is wall-to-wall which means that the union is representing the uh interests of both member and non-member employees. So if a non-member wanted to come up and just talk to the union about uh the collective bargaining agreement or the work that the union is doing around a wage and hour issue for example that would be appropriate that would be within the scope of representational activities. The collective bargaining agreement actually in article 40.1 and we didn't include this in our briefing because this uh the question of membership and um and that issue wasn't uh. Was there was there ever a membership drive on ecology's premises? So I'm not um unfortunately I don't have that uh citation in front of me. I'm not aware of a particular membership drive having taken place but the collective bargaining agreement explains that um upon uh an employee's hiring when they are hired if they are hired into a position that is within the bargaining unit then it is actually ecology that provides membership materials about the union as part of the employee's orientation. And after that the union is not allowed to um to conduct uh those types of membership activities. But again if there is an isolated incident where the union steps outside the bounds that ecology becomes aware of and they take action on that's not evidence of an intent to create a public forum or and it's also not evidence that ecology does not intend to consistently enforce its policies. Because when this court is doing a forum determination analysis the primary question. Well I agree with you that it wouldn't that wouldn't be the end of the inquiry but does that mean that you get summary judgment? I think it does your honor because. I mean if you're in fact doing a membership drive and that wouldn't that be can can a judge conclude on this record that if you're saying a membership drive would be problematic but you're saying just a random statement of that uh can be ignored at this point. But if that's if that would be if that would be a really important issue and there's something in that can it be resolved at summary judgment or does it have to go further? So I think it can be resolved on summary judgment and the reason for that is that Freedom Foundation had the opportunity to conduct extensive discovery in this case. So they had the opportunity to depose ecology witnesses about potential membership drives. They had the opportunity to request and receive many many records in this case and they have been evidence that ecology has essentially thrown up its hands and stopped trying to enforce that particular provision of the CBA and if they're if the Freedom Foundation is trying to prove that the lobby is a designated public forum that's what they have to do. They have to show the type of acquiescence the type of sort of giving up of enforcing those policies that this court found had occurred in the Hopper case. But that's not simply the the the case here. It's important to remember too that Freedom Foundation's claim is very specific and it is that when ecology revised its policies in 2016. Did you just do you dispute that they revised it in response to the incident with Freedom? No your honor ecology has never disputed that fact and in fact they have explained why the policy was revised and it's because there was a security incident. As Judge Hawkins mentioned earlier this individual who gained access to an employee secured area was not just in a costume they had a full beard and a hat totally obscuring their identity and it's important to remember that this was at the end of 2015 when awareness around workplace safety issues was extremely heightened. So this was a very jarring event for the agency and the record shows that the department revised not just policy 1410 but a whole suite of other policies in 2016 that had to do with employee safety and employee security. And what the 2015 incident showed was that ecology could make its policies more clear so that would it would be easier for staff to apply them on a going forward basis and that's precisely what has happened. There's no evidence in the record that any other organization has been granted access to use the lobby for reporting purposes. Is there a different process for someone like Freedom than for someone that just one of your employees would like to talk to? So there is no process in ecology's policies for members of the public to request use of facilities period. It's not something that is open for the public. When an ecology employee wants to sponsor an event that event always has to have a connection to ecology business and ecology's business is primarily protecting and preserving our state's natural resources. So the majority of the time ecology would expect that requests are for that purpose. Now what if someone from ecology let's say you know I think that we all know that agencies sometimes change their emphasis depending on administrations and all of those things. Let's say you have an employee working that isn't you know thinks that there's a different viewpoint on some of these things that you know maybe the bike riding or this that and the other and they want to invite someone to give a contrary view. Would it be okay if that if one of the employees wanted something like this would you grant it? No your honor ecology would not grant it and the reason is that the employee's desire to express maybe that alternative viewpoint is not an authorized use of state resources. So the department of ecology relies on its policies it also relies on the state executive ethics board when it comes to the use and access of its facility. I guess I'm I guess I'm asking so then ecology gets to decide who if if it's something that they like what the person's saying then they'll approve it. If they don't like what the person's saying even if an employee asks for it let's say if an employee asks for freedom I'd like to hear what they have to say. If you don't like what if you don't like that then you just say well no you don't get to come. No your honor that's that's actually not how ecology's policies operate. So take for example the commute trip reduction events right those are that's statutorily mandated work that the department has to do. And under Cornelius the Supreme Court has recognized that an agency can and Cornelius and also the Greer v. Spock case the Supreme Court has held that an agency can make decisions can invite individuals can invite organizations to come and provide information about about which is related to state business without showing an intent to create a public forum and without engaging in viewpoint discrimination. When we're talking about a non-public forum which ecology's lobby we argue undisputedly is the agency can draw those kinds of distinctions without rendering their policies unreasonable. And that's precisely what the department has done here it's enacted a general policy that in order to access and use the lobby you have to have business to conduct. So that means you ask you have the you have the homeless not that the food bank that gets out what if one of your employees wanted to invite catholic charities who does a lot of would they get approved? So I believe but I'm I believe I won't say if I don't know for sure but if Catholic Ministries for example was a member of the combined fund drive and they were they applied to be a featured charity during one of the ecology's combined fund drive events that would be okay. Ecology doesn't draw distinctions when it comes to the charitable organizations that it allows to come in and use its facilities. Ecology is also guided by this idea of de minimis use that the purpose of the lobby which is to facilitate agency business should always be front and center and any use outside of official agency business should be brief and it shouldn't involve any diversion of state resources. And so there's been any leafleting that's occurred in this non-public space there there's a statement in the so I mean the statement I guess if you if a judge if you find if you rule against someone in a summary judgment they're entitled to all inferences in their favor and there's there's if they're entitled to that inference does that create a tribal issue if other people have been allowed to leaflet? No it does not your honor because there is ample evidence in the record for the judge to have concluded as a matter of law that even drawing that inference in favor of freedom foundation the rest of the evidence in this case shows that Mr. Naseworthy either misspoke or was incorrect. Isn't that resolving aren't you making a credibility call there? No that's that's the exact type of thing you're not supposed to do at summary judgment. Correct your honor and I think I'm just saying that when the judge is looking at all of the evidence the judge is also identifying what is material evidence right and a statement. I guess though wouldn't it be material if you allowed other people to leaflet and you didn't allow freedom to leaflet? It would not be material your honor because the statement was made in 2015 ecology revised its policy in 2016 and so this case is looking at the relief that freedom foundation is seeking which is prospective. Prospective, injunctive, and declaratory relief so that means from the moment in 2016 when ecology revised its policies going forward how have those policies been applied? Anything that happened before that is not part of the it can't be considered? It could certainly be considered your honor but we would argue that it is not material to freedom foundation's claims in this particular. Let me ask you one question here I noticed the district court didn't say why ecology's speech restrictions were either reasonable or viewpoint neutral it just simply concluded that they met the statutory requirements as a matter of law. Is the district court obligated to in fact explain or analyze or should we have to send it back because he didn't? No your honor I do not believe the district court is obligated to explain that conclusion. Again the reasonableness and viewpoint neutrality standard was a he determined was a legal question that he resolved as a matter of law and this case is up on jenova review which means that this court is free to look at that issue again and look at the material evidence related to the claim of viewpoint discrimination again. Did I answer your your honor's question? Yeah. Okay thank you. I see him over time if if I may just sum up if there are no additional questions. Let me say a point do we have do either Judge Gelman or Judge Hawkins do you have any additional questions? No. Okay so pull it together in a minute. Thank you. Thank you your honor. The district case got excuse me the district court got this case right. It correctly found no dispute of material fact and correctly ruled as a matter of law that ecology's lobby is a non-public forum and that the regulations governing the lobby are reasonable and viewpoint neutral. For those reasons we ask that you affirm. Thank you. Thank you. Okay I'm going to go back to the appellant and give you two minutes for rebuttal Mr. Blevins. Thank you your honor. I did promise that I would find the record site on Mr. Nasworthy's comment about leafleting and it is at ER 124. He says everybody leaflets out there. He's referring to lobby. We have folks in all the time including the union and they just all stand out there. So that's the reference I was referring to there. I will say that if policy 1410 was created solely because there was a security risk where members of Freedom Foundation or employees of Freedom Foundation entered non-secure areas then 1410 doesn't seem addressed to that problem. So they passed 710 or they modified 710 which regarding security they created security barriers so that people could only access that area via passcode. But it seems like 1410 which address is promoting or soliciting on the premises is is just unrelated to that security concern. So I think it still gives rise to this problematic inference that the policy was inspired by Freedom they didn't want that speech on the premises. I'd also like to know that in deposition testimony Ms. Stewart stated that other organizations would be allowed to speak on matters related to ecology businesses such as Zumba classes or yoga classes in the lobby because those are related to employee wellness. And I think that speaks to this problematic breadth of how ecology defines ecology business. I think it effectively defines it in a matter that says if we like it we allow it. And that I think that kind of broad discretion creates some serious First Amendment concerns. Thank you. What about Ms. Nelson I think she said because the policy was changed in 2016 in response to one of your clients getting back into a secure place that there's you know went into a meeting and of course that would be alarming to people. They and the Mr. Nasworthy comments were prior to that change. Is that can the judge disregard those or put them in their place as opposed to or you know I mean she seems to say well yeah if that if it had happened after and he said people were leafleting that would be a different situation than happening prior. So I think there are two responses. One is I think it's a bit curious for ecology to make that point since they've policy 1410 has always been just an unwritten policy that they've that they've had since the 90s. And so presumably policy 1410 at least in an unwritten way was part of ecology's policy at that time. I think Mr. Nasworthy's statement is still relevant because we don't know whether that continues or not. And I think that the fact that other organizations are allowed to speak on whether that continues to happen or not. So I think that that that statement is still very much relevant. Do we even know what Mr. Nasworthy was referring to? We don't besides he stated the union and said everybody leaflets out there we have folks in all the time. We don't know the scope of that. I think it would be. Was this in a deposition or what? This was a statement he made to Mr. Dewhurst Freedom Foundation's attorney who appeared on the premises in 2015 when the conflict arose. Did you depose him? Mr. Nasworthy we did depose Mr. Nasworthy yes. And did you ask him in his deposition did you ask him what he meant by this phrase everybody leaflets? I'm sorry to say that I don't recall specifically. I believe we did and my understanding my recollection is that he walked that back or said that he didn't recall the other organizations. And I apologize for not having that information right on hand. But I believe that he simply said he didn't recall. So that was under oath? That was under oath? Yes your honor that was that that wasn't a deposition under oath. But I think that we do have a clear indication that there are other organizations that use that space that at least create a triable issue that should go back on remand. Thank you your honor. All right did I can you just quickly respond to Judge Gilman's question about whether the fact that the judge didn't explain his reasoning on why it was a question as to whether he was required to at least address it. In fact the third circuit just a few weeks ago decided in a case called center for investigative reporting the viewpoint neutrality actually has to be addressed first. And that it's a requirement for district court to do so before engaging in public forum analysis. And that's because viewpoint neutrality is required regardless of forum. So I do think it's relevant as to whether this court should remand that that issue is not addressed at all. All right any additional questions by my colleagues? No. All right does not appear to be. Thank you both for your helpful argument in this matter. And we appreciate you both appearing by zoom. And that will conclude the calendar for today. This matter will be submitted and this court is in recess for this week. Have a good weekend everyone. All right and judges you don't get to go yet. So thank you.
judges: Gilman, Hawkins, Callahan